UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

JOSEPH MIKE,

                    Plaintiff,               **MEMORANDUM & ORDER**
                                             19-CV-5407 (MKB)

         v.

DRUG ENFORCEMENT ADMINISTRATION,

                    Defendant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Joseph Mike, proceeding *pro se*, commenced the above-captioned action on September 20, 2019,[1] against the Drug Enforcement Administration (the "DEA") pursuant to 42 U.S.C. § 1983, seeking the return of $30,800.00 that Defendant seized from him on August 28, 1995, at LaGuardia Airport.  (Compl., Docket Entry No. 1.)  The DEA administratively forfeited the seized funds on January 16, 1996.  (Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem.") 2, Docket Entry No. 31-5.)

Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claim is time-barred because the government administratively forfeited these funds twenty-five years ago in 1996,

---

[1] Although Plaintiff signed the Complaint on September 16, 2019, it was filed on the electronic filing system on September 20, 2019.  The Court refers to the page numbers assigned by the electronic case filing system because the Complaint and exhibits attached to it are not consecutively paginated.

and that even if Plaintiff's claim was timely, he fails to meet the criteria for relief.[2]  Plaintiff

opposes the motion.[3]  For the reasons set forth below, the Court grants Defendant's motion.

### I.  Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes

of this Memorandum and Order.  In light of Plaintiff's *pro se* status, the Court also considers and

assumes the truth of the factual allegations in Plaintiff's opposition.  *See Walker v. Schult*, 717

F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations

made by a *pro se* party in his papers opposing a motion to dismiss).[4]

On August 28, 1995, at approximately 1:00 PM, Plaintiff arrived at LaGuardia Airport on

a commercial flight from Charlotte, North Carolina.  (Compl. 3–4.)  Upon arrival, Plaintiff was

detained as he was exiting the airplane, and a DEA Agent subsequently seized Plaintiff's funds,

totaling $30,800.00.[5]  (*Id.* at 4.)  The DEA Agent then drove Plaintiff to John F. Kennedy

Airport ("JFK"), placed Plaintiff in a holding cell, and counted Plaintiff's funds and provided

---

[2]  (Def.'s Mot. to Dismiss, Docket Entry No. 31-1; Def.'s Mem.; Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 31-8.)

[3]  (Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry Nos. 29, 31-6.)

[4]  *See also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

[5]  In its moving papers, Defendant identifies the amount of money seized as $31,623.  (Def.'s Mem. 1.)  Plaintiff accepted this figure in his Opposition.  (Pl.'s Opp'n 1.)

him with a receipt.  (*Id.*)  Plaintiff told the DEA Agent that he was "due to serve a federal

sentence."  (*Id.*)  The DEA Agent transported Plaintiff to the Metropolitan Detention Center

("MDC") in Brooklyn, New York, where he "started [his] previous sentence."[6]  (*Id.*)  Plaintiff

"attempted several times to get [his] money that [was] never . . . forfeited, but [has] not been able

to do so."  (*Id.*)

Plaintiff contends that, on or about January 22, 2021, he was first notified of the

administrative forfeiture of his funds, after Defendant responded to his Complaint.[7]  (Pl.'s Opp'n

3; Pl.'s Letter dated May 19, 2021, at 1, Docket Entry No. 33.)[8]  Prior to this, Plaintiff was not

aware of the administrative forfeiture nor did he understand that the funds had been seized, as he

---

[6]  Plaintiff was later sent to Charlotte, North Carolina, to serve a six-year federal
sentence.  (Pl.'s Opp'n 1.)

[7]  On October 10, 1995, the DEA sent a written Notice of Seizure by certified mail and a
return receipt request to Plaintiff at FCI Lexington, located in Lexington, Kentucky.  (Def.'s
Mem. 1 (citing Decl. of Vicki L. Rashid ("Rashid Decl.") ¶ 4(b), annexed to Def.'s Mot. as Ex.
4, Docket Entry No. 31-4).)  However, the Notice of Seizure was returned to the DEA and
deemed undelivered.  (*Id.*)  Plaintiff maintains that he "was never in [Lexington, Kentucky,] and
the DEA had no reason to believe he was," as it "knew [he] was serving a [six-year] federal
sentence."  (Pl.'s Opp'n 2.)  Subsequently, on November 13, 1995, the DEA sent an additional
Notice of Seizure by certified mail, requesting a return receipt, to Plaintiff at the MDC in
Brooklyn, New York.  (Def.'s Mem. 1 (citing Rashid Decl. ¶ 4(c)).)  On or about November 30,
1995, the DEA "received a receipt reflecting that the MDC Notice was delivered."  (*Id.*)  The
DEA maintains that it also published a Notice of Seizure in *USA Today*, which is a "newspaper
of general circulation in the Eastern District of New York."  (*Id.* at 2 (citing Rashid Decl. ¶
4(d)).)  Plaintiff argues that the DEA "knew [he] had no access" to *USA Today* because he was
incarcerated.  (Pl.'s Opp'n 2.)

[8]  The Court refers to the page numbers assigned by the electronic case filing system
because Plaintiff's Opposition and the exhibit attached to it are not consecutively paginated.

was not charged for a crime when the funds were taken from him and the DEA Agent promised him that his funds would be returned.[9]  (Pl.'s Opp'n 3.)

Plaintiff seeks to recover the funds seized by the DEA "with a fa[ir] interest rate of 5% compounded . . . since 1995" and to recover for pain, suffering, hardship, and the loss of his mother's house — which was lost to foreclosure as a result of the seizure of Plaintiff's funds, leaving Plaintiff and his mother homeless at the time — in the total amount of $96,752.92. (Compl. 4–5.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations [in the complaint] as true and drawing all reasonable inferences in the plaintiff['s] favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

---

[9]  Plaintiff also contends that he had no reason to believe his funds were being seized and forfeited, as he was "not in the process of [committing] a crime[,] nor was he being investigated for a crime."  (Pl.'s Letter dated May 19, 2021, at 2.)

Although all allegations contained in the Complaint are assumed to be true, this tenet is

"inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

      In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings

should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106

(1976)); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must

liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments that they

suggest" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))); *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to

construe a *pro se* complaint liberally" (citing *Erickson*, 551 U.S. at 94)).

      **b.**   **Plaintiff's claim is time-barred**

      Defendant argues that Plaintiff's claim is time-barred under both the standard utilized

prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C.

§ 983(e), and under CAFRA.  (Def.'s Mem. 7–11, 14.)  In support, Defendant argues that

pre-CAFRA, all actions against the United States were barred unless the complaint was filed

within six years after the right of action first accrued, and Plaintiff's right of action accrued more

than six years ago.  (*Id.* at 9–10.)  Defendant also argues that under CAFRA, the Complaint is

barred by the five-year statute of limitations.  (*Id.* at 14 (citing 18 U.S.C. § 983(e)).)  In addition,

Defendant argues that Plaintiff has not demonstrated circumstances warranting equitable tolling

because he does not explain why he failed to seek judicial relief after a DEA Agent failed to

follow up with him in 1998 — when Plaintiff was told "he would receive his funds [and] that

someone would contact him in 4-6 weeks."  (*Id.* at 10–11 (alteration in original) (quoting Resp.

to Order to Show Cause 2–3, Docket Entry 6).)

Plaintiff contends that in the years following the 1998 call with a DEA Agent, he made phone calls and sent letters in an attempt to recover his funds.  (Resp. to Order to Show Cause 3.) He admits that he was unaware of the process to challenge a seizure and forfeiture but argues that he believed the issue would be resolved because the DEA Agent promised that his funds would be returned.  (Pl.'s Opp'n 3–4.)

On April 25, 2000, Congress passed CAFRA, which permits claims against the United States for injury or loss of goods or property while in law enforcement custody.  18 U.S.C. § 983(e); *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *5 n.7 (E.D.N.Y. Mar. 27, 2013).  CAFRA is the exclusive remedy for challenging a completed administrative forfeiture for lack of proper notice, and provides a five-year statute of limitations for challenging forfeitures. 18 U.S.C. § 983(e); *see Cobar v. Drug Enf't Admin. Asset Forfeiture Section*, No. 12-CV-7415, 2014 WL 1303110, at *4 (S.D.N.Y. Mar. 31, 2014) ("[CAFRA] provides that a motion to set aside a declaration of administrative forfeiture 'may be filed not later than [five] years after the date of final publication of notice of seizure of the property.'" (first alteration in original)), *aff'd sub nom. Cobar v. Drug Enf't Admin.*, 600 F. App'x 31 (2d Cir. 2015); *Ramirez de Sarrazola v. U.S. Dep't of Just.*, No. 05-CV-337, 2006 WL 1806506, at *3 (E.D.N.Y. June 29, 2006) ("CAFRA established a five year statute of limitations for challenges to forfeitures.").  It provides in relevant part, that "[a]ny person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property."  18 U.S.C. § 983(e)(1); *see United States v. Brome*, 942 F.3d 550, 552 (2d Cir. 2019) (per curiam) ("The right to seek to set aside the forfeiture is limited to claims of lack of adequate notice." (citing *Lucas v. United States*, 775 F.3d 544, 547 (2d Cir. 2015))); *see also Clark ex rel.*

*New York v. Suffolk County*, No. 14-CV-7195, 2017 WL 1067800, at \*5 (E.D.N.Y. Feb. 24, 2017) (same), *report and recommendation adopted*, 2017 WL 1078566 (E.D.N.Y. Mar. 20, 2017).  The limitations period starts on the date of the final publication of the notice of seizure of property.  18 U.S.C. § 983(e)(1); *Hayes v. United States*, No. 08-CV-6525, 2009 WL 1867965, at \*2 (S.D.N.Y. June 29, 2009); *Ramirez de Sarrazola*, 2006 WL 1806506, at \*3 ("CAFRA marks the start of the limitations period at the date of the final publication of the notice of seizure of property.").  Before CAFRA was enacted, an action seeking to correct a procedurally deficient forfeiture was subject to a six-year statute of limitations under 28 U.S.C. § 2401(a).  *See* 28 U.S.C. § 2401(a) ("[A] civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007) (holding that an action challenging the seizure and forfeiture of personal effects is subject to "the six-year catch-all statute of limitations for civil actions against the federal government" (citing 28 U.S.C. § 2401(a))); *Adames v. United States*, 171 F.3d 728, 731 (2d Cir. 1999) (same); *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 652–53 (2d Cir. 1998) (holding that the appropriate statute of limitations period for an action challenging the procedural deficiency of a funds forfeiture is six years).

The Second Circuit has made clear that CAFRA standards are not applied retroactively to forfeiture proceedings commenced before the effective date of CAFRA.[10]  *See United States v. Collado*, 348 F.3d 323, 326 (2d Cir. 2003) (per curiam) ("In 1998, when the events at issue occurred, civil forfeiture was governed by an earlier version of 21 U.S.C. § 881(a)(7).  Although Congress later amended the civil forfeiture laws by passing the [CAFRA], CAFRA does not

---

[10]  There is an exception to CAFRA not relevant in this case which relates to the enactment of the fugitive disentitlement doctrine.  28 U.S.C. § 2466.

apply to actions filed before its effective date."); *United States v. $557,933.89*, 287 F.3d 66, 76 n.5 (2d Cir. 2002) (noting that "the new forfeiture procedures apply only to proceedings commenced on or after [CAFRA's effective date]" (citing *United States v. 221 Dana Ave.*, 261 F.3d 65, 67 n.1 (1st Cir. 2001))).  The Second Circuit, however, has not clearly stated whether CAFRA applies to civil complaints initiated after its effective date, but challenging forfeitures commenced before CAFRA's effective date.  *Guzman v. United States*, No. 05-CV-4902, 2005 WL 2757544, at *1–2 & n.3 (S.D.N.Y. Oct. 24, 2005) (recognizing that while it remains an open question whether CAFRA applies to forfeiture proceedings begun before its effective date on August 23, 2000, the plaintiff's claim was time-barred under both the five-year CAFRA time limit and the six-year time limit for challenges to agency action under 28 U.S.C. § 2401); *Ramirez de Sarrazola*, 2006 WL 1806506, at *3–4 (analyzing a forfeiture claim under both the five-year CAFRA time limit and the six-year time limit prescribed by section 2401, where the seizure of the plaintiff's funds occurred prior to the effective date of CAFRA but the plaintiff filed a complaint after the effective date of CAFRA).

The Court does not determine which statute of limitations should apply to Plaintiff's claim as the claim is barred under both.

### i.  CAFRA's five-year statute of limitations

Plaintiff's claim is barred by CAFRA's five-year statute of limitations.

Under CAFRA, the limitations period begins to run on the date of the final publication of the notice of seizure of property.  18 U.S.C. § 983(e)(3); *see Ramirez de Sarrazola*, 2006 WL 1806506, at *3 ("CAFRA marks the start of the limitations period at the date of the final publication of the notice of seizure of property.").  The DEA published notices of seizure in *USA Today* in October and November of 1995, pursuant to 19 U.S.C. § 1607(a) and 21 C.F.R.

§ 1316.75.[11]  (*See* Suppl. Decl. of Vicki L. Rashid ("Rashid Suppl. Decl.") ¶ 4(c), annexed to

Def.'s Mot. as Ex. 7, Docket Entry No. 31-7; *USA Today*, Legal Notice, annexed to Rashid

Suppl. Decl. as Ex. 1, Docket Entry No. 31-7, at 10–11.)[12]  Therefore, at the time Plaintiff

commenced this action, almost twenty-four years later in September of 2019, CAFRA's

five-year statute of limitation had elapsed.  *See Hayes*, 2009 WL 1867965, at *2 ("[The]

[p]laintiff's claims are time-barred under CAFRA's five-year statute of limitations because '[t]he

final notice of seizure was published in the *Wall Street Journal* on September 4, 2001' and 'this

action was not commenced before September 4, 2006.'" (third alteration in original)); *see also*

*Can v. U.S. Enf't Agency*, 764 F. Supp. 2d 519, 521 (W.D.N.Y. 2011) (finding the plaintiff's

---

[11]  The DEA had a statutory obligation to notify Plaintiff of the impending forfeiture.  *See* 19 U.S.C. § 1607(a) ("[T]he appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit . . . to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct.  Written notice of seizure together with information on the applicable procedures shall be sent to each party. . . .").  "Generally, courts considering a motion to dismiss may 'take judicial notice of the *fact* that press coverage . . . contained certain information' so long as they do not rely on the 'truth' of that information." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 n.11 (2d Cir. 2013) (alteration in original) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 302 (S.D.N.Y. 2010) ("On a motion to dismiss, a court may take judicial notice of the publication of a newspaper article without converting the motion into one for summary judgment, provided that consideration is limited to the fact of publication and not the truth of the article's content."); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").  Because the notices of seizure were published in a publicly circulated newspaper and the content of the publication is not being offered for the truth of the matters asserted, the Court takes judicial notice of the fact of the publication of the notices in *USA Today*.  *See e.g.*, *Cobar v. Drug Enf't Admin. Asset Forfeiture Section*, No. 12-CV-7415, 2014 WL 1303110, at *8 (S.D.N.Y. Mar. 31, 2014) (considering a final publication of a notice of seizure published in the *Wall Street Journal* on a motion to dismiss), *aff'd sub nom. Cobar v. Drug Enf't Admin.*, 600 F. App'x 31 (2d Cir. 2015); *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 264–65 (E.D.N.Y. July 7, 2014) (considering three notices of seizure published in The *Wall Street Journal* at the motion-to-dismiss stage where DEA provided evidence of publication).

[12]  Because the Supplemental Declaration and the exhibits attached to it are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

"failure to file this complaint within the five years statute of limitations requires that the complaint be dismissed" because the final publication of the notice of seizure was made in the *Wall Street Journal* on August 23, 2004, and the complaint was not filed until September 23, 2009).

### ii.   Pre-CAFRA's six-year statute of limitation

Plaintiff's claim is also barred by the six-year statute of limitation in effect under 28 U.S.C. § 2401(a) prior to the enactment of CAFRA.

Under this standard, a plaintiff's cause of action accrues "when he discovered or had reason to discover that his property had been forfeited without sufficient notice." *Polanco*, 158 F.3d at 654 (citing *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993)); *see also Walker v. U.S. D.E.A.*, No. 01-CV-3668, 2002 WL 1870131, at *3 (S.D.N.Y. Aug. 14, 2002) ("Notice of the DEA's intent to forfeit property is sufficient if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' whether or not the interested parties receive actual notice." (quoting *Dusenbery v. United States*, 534 U.S. 161, 168 (2002))).[13] Thus, the statute of

---

[13]  Plaintiff's primary argument appears to be that he did not receive actual notice of the forfeiture proceedings.  (*See* Pl.'s Opp'n 2–4 ("On November 30[, 1995,] [the] DEA received a receipt reflecting that MDC had been delivered notice.  [However, Plaintiff] was a holdover [at] MDC awaiting transport to Charlotte, [North Carolina,] [and] [a]s a holdover [] at MDC [Plaintiff] received no mail.").)  "This is insufficient grounds by or which [p]laintiff can bring his claim.  Any failure by the DEA to actually notify [p]laintiff in writing, even if true, does not render its written and published notices unreasonable." *Harper v. United States*, No. 15-CV-4833, 2016 WL 4994996, at *9 (E.D.N.Y. Aug. 3, 2016) (footnote omitted), *report and recommendation adopted*, 2016 WL 4995077 (E.D.N.Y. Sept. 19, 2016); *see Mikhaylov*, 29 F. Supp. 3d at 268–69 (rejecting the plaintiff's argument that actual notice of the forfeiture proceedings was required where the DEA received a signed receipt, confirming delivery to the plaintiff's apartment, even though he was incarcerated and thus had no way of knowing, or reason to believe, that the written notice was sent to the wrong address); *Guzman*, 2005 WL 2757544, at *3 ("[w]hether or not [the] [p]etitioner actually received the notice, the

limitations begins to run "at the earliest of the following dates: at the close of the forfeiture proceedings, however soon after the seizure; or if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action." *Polanco*, 158 F.3d at 654 (citing *Boero v. Drug Enf't Admin.*, 111 F.3d 301, 305 (2d Cir. 1997)); *Assil v. United States*, No. 07-CV-11037, 2008 WL 4104026, at *4–5 (S.D.N.Y. Aug. 26, 2008) ("[T]he Second Circuit held that the plaintiff's . . . cause of action for the return of the money allegedly seized without connection to a related criminal prosecution: accrued at the earliest of the following dates: at the close of the forfeiture proceedings, however soon after the seizure; or if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action, at which time the claimant — without other notice — had reason to know that the forfeiture proceedings had begun (or that the property was being held) without due process." (quoting *Polanco*, 158 F.3d at 654)); *Ramirez de Sarrazola*, 2006 WL 1806506, at *4 (same); *see Guzman*, 2005 WL 2757544, at *2–3 (analyzing six-year limitations period from when (1) the forfeiture was completed and (2) the plaintiff discovered or had reason to discover that his property had been forfeited without sufficient notice and determining the plaintiff had reason to discover that his property had been forfeited when the government provided constitutionally sufficient notice, not when the plaintiff filed a complaint); *see also Garba v. United States*, No. 06-CV-381, 2006 WL 3197182, at *2 (E.D.N.Y. Nov. 3, 2006) ("With regard to the later date, a plaintiff may have a total of eleven years — the five year forfeiture statute of limitations plus the six-year statute of

---

government's certified mailing to the jail bars his challenge" under CAFRA).  "Instead, 'the proper inquiry . . . is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice.'"  *Harper*, 2016 WL 4994996, at *9 (quoting *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).

limitations under 28 U.S.C. § 2401(a) — post seizure to complain about the deprivation of his property." (citing *Polanco*, 158 F.3d at 654)).

Even under pre-CAFRA law, Plaintiff's claim is time-barred.  At the earliest, Plaintiff's claim accrued on January 16, 1996, when his funds were administratively forfeited, (Def.'s Mem. 2), and the six-year limitations period expired in January of 2002.  However, even assuming that the statute of limitations began to run in August of 2000 — the end of the five-year period within which the government was permitted to bring a forfeiture action — the six-year statute of limitations would have expired in August of 2006.  *See Garba*, 2006 WL 3197182, at *1 (dismissing the plaintiff's motion to return seized property as time-barred where property was seized by the DEA in March of 1992, forfeited in October of 1992, and the plaintiff filed their complaint in January of 2006 and alleged that he never received notice of any forfeiture proceeding).  Plaintiff commenced this action in September of 2019, over thirteen years after the limitations period ended, making the action untimely.

### iii.   Plaintiff has not sufficiently alleged a basis for equitable tolling

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco*, 158 F.3d at 655.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))); *see also*

12

*Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (explaining that equitable tolling of exhaustion time may apply, but only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (same).

Plaintiff has not alleged circumstances warranting equitable tolling of either statute of limitations. Plaintiff contends that he and his family contacted DEA Agents multiple times for the return of his funds after his incarceration in 1995 and until Plaintiff was recharged and incarcerated in January of 2005. (Resp. to Order to Show Cause 2–3.) Accepting Plaintiff's arguments and tolling the limitations period during the pendency of Plaintiff's communications with the DEA Agents — August of 1995 through January of 2005 — Plaintiff nevertheless fails to show reasonable diligence after January of 2005. Plaintiff does not allege that he took any action to seek the return of the funds after January of 2005. *Bertin*, 478 F.3d at 494 n.3 ("Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002))). Rather, Plaintiff waited almost fifteen years after his last communication — and almost a decade after the limitations period would have expired with tolling — to file this Complaint and offers no explanation as to why he did not

13

pursue his claim after 2005 and waited until 2019 to bring a claim in order to justify granting the

extraordinary remedy of equitable tolling.[14]  *See id.* (finding that the plaintiff failed to exercise

due diligence in preserving his legal rights and thus the action was time-barred when the plaintiff

filed his action two months after the limitations period, even when tolling the limitations period

for the duration of the plaintiff's pursuit of a remedy through the wrong forum); *Gonzalez v.

United States*, No. 01-CV-10095, 2003 WL 1213172, at *3 (S.D.N.Y. Mar. 17, 2003) ("[I]f

Gonzalez had shown that he made reasonable attempts to secure the return of his property during

the statutory period, equitable tolling might have applied."); *see also Michel v. United States*,

No. 17-CV-1893, 2019 WL 4602828, at *3 (E.D.N.Y. Sept. 23, 2019) ("Equitable tolling . . .

should not be premised on 'lack of education, *pro se* status, or ignorance of the right to bring a

claim.'" (quoting *Watson*, 865 F.3d at 133)); *Garba*, 2006 WL 3197182, at *2 (holding that the

plaintiff did not demonstrate that he exercised the reasonable diligence required to justify the

application of equitable tolling to explain his inaction from 1992 to 2005 by asserting that he was

out of the country and the forfeiture proceeding was an error); *Perez v. United States*, No.

89-CR-408, 2006 WL 1582187, at *3 (E.D.N.Y. Mar. 21, 2006) (finding that delay precluded a

finding of reasonable diligence because the plaintiff waited fourteen and half years to follow up

on information that the government would release his $1510.00 in cash and other property that it

seized).

Accordingly, the Court finds that Plaintiff fails to allege facts in support of the

application of equitable tolling.  The Court therefore grants Defendant's motion and dismisses

---

[14]  Although Plaintiff argues that he was not aware of his legal remedies to pursue this forfeiture claim until January 22, 2021, when he claims to have been first notified of the administrative forfeiture, (Pl.'s Opp'n 3), Plaintiff nevertheless filed the Complaint in September of 2019, prior to that notification, (Compl.).

the Complaint.  *See Ramirez de Sarrazola*, 2006 WL 1806506, at *4 (dismissing action where the plaintiff filed the complaint challenging forfeiture of $124,900.00 nearly a year after the expiration of the six-year limitations period).

       **c.   Leave to amend**

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty days of this Memorandum and Order.  Plaintiff must explain the circumstances that resulted in the thirteen-year period of inaction in preserving his legal rights.  If Plaintiff amends the Complaint within thirty days, the amended complaint will completely replace the original Complaint and it must contain all of the claims Plaintiff seeks to pursue.  If Plaintiff elects to file an amended complaint, it must be captioned "Amended Complaint" and include the same docket number as this Memorandum and Order.

**III.   Conclusion**

For the reasons stated above, the Court grants Defendant's motion and dismisses the Complaint as time-barred.  The Court grants Plaintiff leave to file an amended complaint within thirty days from the entry of this Memorandum and Order and stays all proceedings for thirty days or until Plaintiff files an amended complaint, whichever is earlier.

If Plaintiff fails to file an amended complaint within the time allowed or to show good

cause as to why he cannot, the Court will direct the Clerk of Court to enter judgment dismissing

the action for the reasons stated above.

Dated:  March 31, 2022
       Brooklyn, New York

                          SO ORDERED:


                          _____s/ MKB_____
                          MARGO K. BRODIE
                          United States District Judge